UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI, DIVISION)

In re:                                          :            CASE NO.: 19-13816-LMI
                                                :
SUPER BRITE SCREW CORP.,                        :            CHAPTER 7
                                                :
            Debtor.                             :
_____/

## TRUSTEE'S EXPEDITED MOTION TO SELL PROPERTY SUBJECT TO HIGHER AND BETTER OFFERS FREE AND CLEAR OF ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(f) WITH LIENS TO ATTACH TO SALE PROCEEDS

| Basis for Exigency |
|---|
| The Trustee has been presented with an all-cash offer to purchase substantially all assets of the Debtor. Due to the substantial administrative rent costs to the estate if this closing were delayed (the administrative rent is about $8,000.00 per month), and due to the fact that the Debtor's personal property is not ensured, the Trustee respectfully requests a hearing on this Motion on an expedited basis. |

COMES NOW, Robert A. Angueira, the duly appointed, qualified, and acting chapter 7 bankruptcy trustee ("**Trustee**") for the bankruptcy estate of Debtor, Super Brite Screw Corp. (the "**Debtor**"), by and through undersigned counsel, pursuant to 11 U.S.C. §§105(a) and 363(b)(1) and (f), Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1(A), and moves the Court ("**Motion**") for entry of an order authorizing and permitting the Estate to sell the Debtor's personal property pursuant to the Asset Purchase Agreement (the "**APA**") attached hereto as **Exhibit 1** (the "**Sale**")[1]. The Sale shall be free and clear of all liens, claims and encumbrances with allowed liens to attach to sale proceeds, subject to higher and better offers.  In support of the Motion, Trustee Angueira respectfully states as follows:

---

[1] The Sale represents the highest and best offer received by the Trustee.

### Jurisdiction and Venue

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363(b) and (f).

### Background

2.      The Debtor commenced the instant proceedings by filing a Petition for Relief under Chapter 7 of the U.S. Bankruptcy Code on March 26, 2019 (the "***Petition Date***").

3.      On March 26, 2019, Robert A. Angueira was appointed to serve as the Chapter 7 Trustee (the "***Trustee***") in this case.

4.      Pre-petition the Debtor operated as a wholesaler of screws, nuts, bolts and washers. A substantial portion of the Debtor's inventory is located at 7265 W 19th Court, Hialeah, FL 33014. A portion of the Debtor's personal property was seized pre-petition by creditor Tri-Star Trading Co., which property is currently located at Dixie Transport, Inc. at 15627 NW 15 Ave, Miami, FL 33169.

### The Assets, the  Proposed Sale, and the Liens & Claims

#### The Assets

5.      The Trustee has obtained an offer for a bulk sale of the Debtor's inventory, to be purchased by Tri-Star Trading Corp. (the "***Buyer***"). As further discussed herein the Buyer is a creditor of the Debtor and as aforementioned seized a portion of the Debtor's personal property pre-petition. As described in substantially more detail herein, the offer is for a total sale price of $145,000.00 (the "***Purchase Price***"), for the Debtor's personal property located at Dixie Transport, Inc. at 15627 NW 15 Ave, Miami, FL 33169, and located at 7265 W 19th Court, Hialeah, FL 33014

(collectively, the "*Assets*") in a wall-to-wall and floor to ceiling sale. However, the Debtor's computers which contain the Debtor's books and records are not included and shall not be part of the Sale.

6.      The Buyer is not required to clear out and clean the Hialeah Location. It is anticipated and expected that the Buyer may leave behind, at the Hialeah Location, certain items included but not limited to: fixtures, certain containers, some shelving, racks and furniture that are not economically feasible to move out. Finally, the Buyer is not expected to leave the Hialeah Location in broom clean condition. The Buyer may, at his discretion, chose not to take certain furniture currently located in the Hialeah Location. If that happens, the Trustee may, but it is not required, to move such furniture and other items to another facility and sell them. If the Trustee decides to do this then he will file a separate motion as needed.

7.      This proposed sale includes the Debtor's personal property, in a wall-to-wall and floor-to-ceiling sale, located at Dixie Transport, Inc. at 15627 NW 15 Ave, Miami, FL 33169 (the "*Dixie Location*"), and located at 7265 W 19th Court, Hialeah, FL 33014 (the "*Hialeah Location*"), in an as-is-where is condition, without any warranties, express or implied, and without any representations as to quality or quantity.

8.      The Trustee submits that the sale price is fair and reasonable and believes that Estate would not have realized a greater return had the Assets been sold in a public auction. The proposed Sale is subject to higher and better offers, if any are received prior to the hearing on this Motion.

9.      While it is theoretically possible that a seller of the same personal property selling the individual items to individual buyers might obtain a higher cumulative price, it is also possible that the result might be an action with virtually no buyers except for a few select pieces of personal

property. Additionally, a public auction sale would result in significantly higher administrative costs associated with selling the Assets. A bulk sale of the Assets eliminates the risks associated with an auction and reduces the administrative costs associated with the same. Therefore, the Trustee has elected to take the bulk offer made by the Buyer for a guaranteed price.

10. The reasons the Trustee has taken this approach is that:

   a. The risks of very high administrative costs of a public auction sale of the Debtor's inventory. If the Assets which are the subject of this Motion were sold by way of a public auction sale, the administrative expenses will be substantially higher, and the Trustee cannot make any assurances that the Estate would realize any net benefit from such a public action sale.

   b. Offers to auction the equipment by auctioneers invariably included a component whereby the estate would be responsible for costs of at least $11,685.00 regardless of results, and the Estate has no way to guarantee, let alone advance, the payment of such costs.

### The Proposed Sale

11. The terms of the proposed sale to the Buyer identified in **Exhibit 1**, or any higher and better bidder, are described with specificity in the enclosed APA attached as **Exhibit 1**, with select terms summarized below:[2]

   a. **Purchase Price and Deposit**: The purchase price for the Assets is $145,000.00. Pursuant to the APA the Buyer will give the Trustee a deposit of $29,000.00 on May 6, 2019, which will be held by Robert A. Angueira, P.A., pursuant to Section 2.2 of the APA. This Buyer is willing to close on the sale and pay the balance of the purchase price $116,000.00 ($145,000.00 - $29,000.00) within three (3) business day after Bankruptcy Court approval of the sale, unless the time is shortened by this Court or extended by the Trustee.

   b. **As Is – Where Is:** The Assets will be sold on an "AS IS" and "WHERE IS" WITH ALL FAULTS OR DEFECTS WHETHER KNOW OR UNKNOWN AND NO WARRANTIES OR REPRESENTATIONS WHATSOEVER.

---

[2] The following is a summary of the terms of the Asset Purchase Agreement. Parties in interest are encouraged to review the Asset Purchase Agreement in its entirety. To the extent of any conflict between the summary contained herein and the APA, the APA shall govern.

c. **Encumbrances Against the Property:** The proposed sale will be free and clear of any and all liens, claims and encumbrances pursuant to 11 U.S.C. §363(f) with liens to attach to sale proceeds.

d. **Closing**: Closing on the proposed Sale will occur within three (3) business days of the entry of a Court Order granting this Motion, unless shortened by the Court or extended by the Trustee.

e. **Removal of Assets**: A portion of the Assets are located at the Dixie Location. This location is a warehouse which is not controlled by the Trustee. In the event that the Bankruptcy Court approves this agreement and the sale of the Assets to the Buyer, the Buyer agrees that he will remove the Assets from the Dixie Location by May 24, 2019. In the event that Buyer does not remove all property by May 24, 2019, the Buyer shall pay the Estate $500.00 per day starting on May 25, 2019, for each day the Buyer continues to occupy the Dixie Location, for a maximum of thirty (30) additional days. A portion of the Assets are located at the Hialeah Location. This location is a warehouse which formerly served as Super Brite Screw Corp's principal place of business, and which is now secured and controlled solely by the Trustee. In the event that the Bankruptcy Court approves this agreement and the sale of the Assets to the Buyer, the Buyer agrees that Buyer will remove all property (subject to paragraph 1.1 herein) from the Hialeah Location on or before May 24, 2019 by 5:00 p.m. In the event that Buyer does not remove all property from the Hialeah Location by May 24, 2019, the Buyer shall pay the Estate $5,000.00 by May 25, 2019, which will give the Buyer until June 21, 2019 by 5:00 p.m. to remove the items the Buyer is taking from the Hialeah Location. If the Assets have not been completely removed by 5:00 p.m. on June 21, 2019, then the Trustee may file an ex parte Motion seeking authority to change the locks and retain all property still remaining at the Hialeah Location.   Until such time as the sale to Buyer has been approved, and the total purchase price has been paid, Buyer may not remove any of the property from the Dixie Location or the Hialeah Location.

f. **Insurance during Removal of Property**. Buyer represents and warrants that it will use a licensed and insured moving company to remove the Assets from the Dixie Location and the Hialeah Location. The Buyer shall provide the Trustee with proof of the mover's insurance coverage at closing which coverage shall include Buyer and Seller as additional insureds. In the event that Buyer fails to comply with the provisions of this paragraph, then the Buyer shall pay the Estate the sum of $500.00 per day until the Buyer complies.

g. The Buyer shall be responsible for any and all federal and state taxes incurred in connection with the transactions contemplated by the proposed Sale.

### Bidding Procedures and Increments

12.    If any interested party desires to submit an offer to purchase the Assets from the Trustee, the next minimum bid from any other potential bidders must be at least $5,000.00 higher than the Purchase Price of $145,000.00 identified in §2.1 above (the "*Overbid*"), in other words the Overbid shall be in the amount of $150,000.00. Furthermore, to qualify as a bidder the Trustee must receive a deposit of $30,000.00 (20% of $150,000.00) in the form of a cashier's check, and a signed asset purchase agreement, at least two (2) business days prior to any hearing to approve this agreement. Subsequent bids shall be in $1,000.00 increments, and then proceeding down to incremental bids at the Trustee's discretion. **Any interested party who desires to submit a competing offer to the Trustee must provide the Trustee, Robert A. Angueira c/o Yanay Galban, Esq, a comparable signed Asset Purchase Agreement in a form substantially similar to Exhibit 1, and a deposit of $30,000.00 (payable to Robert A. Angueira P.A. Trust IOTA Account, at 16 SW 1ˢᵗ Avenue, Miami FL 33130), at least two (2) business days prior to any hearing on this Motion. Failure to provide both (i) a signed Sales Contract in a form substantially similar to Exhibit 1; and also (ii) a $30,000.00 refundable deposit at least two (2) business days prior to the hearing on this Motion may prevent any competing offers from being considered by the Trustee.**

13.    Any bid must not contain any contingencies to the validity, effectiveness, and/or binding nature of the offer. A bid must include financial information sufficient for the Trustee to assess the financial wherewithal of the bidder to close on the sale of the Assets in the event that the bidder is the successful bidder.

14.    The Trustee respectfully requests that, to the extent there is a higher and better offer than the offer presented to the Court pursuant to the enclosed **Exhibit 1**, this Court hold or

authorize the Trustee to conduct an auction and that this Court confirm the sale immediately thereafter. The Trustee recommends that bidding be conducted at the hearing on this Motion (the "*Sale Hearing*").

15.    Trustee Angueira reserves the right as he may reasonably determine to be in the best interest of the estate to: (a) determine which bidders are qualified bidders; (b) determine which bids are qualified bids; (c) determine which qualified bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the bid procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the estate.

16.    The Trustee submits that the foregoing Bid Procedures are consistent with the Trustee's best business judgment and will provide a benefit to the estate. The Trustee further submits that the Bid Procedures provide a fair and reasonable means of ensuring that the Assets are sold for the highest or best offer attainable.

**Applicable Authority**
**Sale of the Property Under 11 U.S.C. §363(b)**

17.    Property of the estate may be sold outside the ordinary course of business. Bankruptcy Code § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts have held that transactions should be approved under Bankruptcy Code §363(b)(1) when: (a) they are supported by the trustee's sound business judgment; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the buyer is acting in good faith.  See, e.g., In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); In re Phoenix Steel Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009); In re Chrysler LLC, 405 B.R. 84 (Bankr. S.D.N.Y. 2009). Each of these conditions is met in this case.

18.     The Trustee's sale of the Estate's interest in the Assets to the Buyer pursuant to the terms set forth in the APA (subject to higher and better offers) is an exercise of the Trustee's sound business judgment.

19.     Additionally, the Trustee has satisfied the notice requirements imposed under the Bankruptcy Rules and the Local Rules. Rule 6004(a) requires that notice of a proposed sale of property outside the ordinary course of business is to be provided in accordance with Fed. R. Bankr. P. 2002(a)(2), (c)(1), and (k). These provisions provide that all creditors must receive at least twenty-one (21) days' notice of a sale of estate assets outside the ordinary course of business, unless the Court, for cause, shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Fed. R. Bankr. P. 2002(c)(l) provides that the notice of the proposed sale of assets is to include, among other things, a general description of the assets, the terms and conditions of any sale, and the time fixed for filing objections.

20.     The Trustee submits that the Sale was negotiated, proposed and entered into by the Trustee and the Buyer in good faith, without collusion and from arm's-length bargaining positions. The Buyer has proceeded in good faith in all respects in connection with this proceeding, is a "good faith buyer" within the meaning of §363(m) of the Bankruptcy Code and, as such, are entitled to all the protections afforded thereby.

21.     The Trustee submits that the sale price is fair and reasonable and believes that Estate would not have realized a greater return had the Assets been sold in a public auction. The proposed Private Sale is subject to higher and better offers, if any are received prior to the hearing on this Motion.

### The Sale Meets the Requirements of 11 U.S.C. §363(f)

22.     Section 363(f) of the Bankruptcy Code sets forth the conditions under which a sale

of debtor's property outside the ordinary course of business can be made free and clear of all liens, claims and other encumbrances (the "***Encumbrances***").

23.     This Court has the authority to approve the Sale pursuant to §363(f)(2), (4) and (5) because; parties holding an interest have consented to the Sale and the attachment of their interests to the proceeds of the Sale; or parties could be compelled to accept a money satisfaction of such interest.

24.     In connection with this Sale, the Trustee has reviewed the Official Records of Miami-Dade County, Florida; the Florida Secured Transactions Registry; and the Claims Register in this case.  The following is a list of encumbrances (collectively, the "***Encumbrances***") that are (or purport to be) secured by the Assets:

    a.  A review of UCC-1 Financing Statements filed with the Florida Secured Transactions Registry reflects an encumbrance held by Professional Bank (the "***Bank***"), pursuant to the UCC-1 #20130020428X, filed on November 12, 2013. A review of UCC-1 Financing Statements filed with the Florida Secured Transactions Registry reflects an encumbrance held by the Bank, pursuant to a UCC-1 #20160926888X, filed on October 28, 2016. As of Petition Date the Debtor owed a balance of approximately $730,381.03 to the Bank. This encumbrance shall be referred to as the "***Professional Lien***."

    b.  A review of UCC-1 Financing Statements filed with the Florida Secured Transactions Registry reflects an encumbrance held by Florida Business Development, pursuant to UCC-1 #201700242839, filed on February 8, 2017 the "***Development Lien***." As reflected in the UUC-1 the Development Lien is second to the Professional Lien.

    c.  A review of records of the Miami-Dade County Tax Collector does not reflect an outstanding balance for unpaid personal property taxes "***Personal Property Taxes***."

    d.  A review of the Official Records of Miami-Dade County, Florida reflects a judgment which was recorded on March 8, 2019, in Book 31357 Page 2043 by Elite Sales, Inc. in the amount of $11,515.21 (the "***Elite Lien***"). The Trustee's position is that since the Elite Lien was perfected within the ninety days pre-petition, the Elite Lien is avoidable as a preference under 11 U.S.C. §547(b). No other unsatisfied liens or judgments of record against the Debtor are reflected in the Official Records of Miami-Dade County, Florida.

    e.  A review of the records maintained by the Florida Department of State reflects a judgment lien certificate in the amount of $1,271,508.12 which was filed against the Debtor pursuant to Fla. Stat. §55.202 by Tri-Star Trading Co. (the Buyer) on November 28, 2017.

    f.  A review of the claims register for this case reflects that Claim No. 1-1 was filed by Ally Bank as secured in the amount of $35,861.00 (the "*Ally Claim*"). Ally Bank's claim was secured by a 2017 Ford Transit Van. Upon reasonable information and belief, the 2017 Ford Transit Van was surrendered by the Debtor pre-petition and such vehicle is not subject to the Sale pursuant to the APA. The Trustee submits that he will not administer the 2017 Ford Transit Van as it was surrendered by the Debtor pre-petition.

25.    The attachment of all Encumbrances to the proceeds of the Sale is appropriate pending this Court's determination as to the validity, priority and extent of the Encumbrances. Pending that determination, the interests are adequately protected by a replacement lien on the proceeds from the Sale of the assets. Thus, the Court should approve the Sale under Section 363(f) of the Bankruptcy Code.

26.    The Ally Claim is a bona fide dispute pursuant to §363(f)(4).

### Execution of Documents

27.    The Trustee requests the Court to authorize him to execute any and all documents necessary to affect the Sale of the Assets.

### Waiver of Stay

28.    The Trustee requests the Court to waive the fourteen (14) day stay applicable to orders approving the Sale of the Property pursuant to the provisions of Rule 6004(h), Fed. R. Bankr. P., and authorize the Trustee to proceed with the Sale of the Assets immediately upon the Court's entry of an order approving the Sale to Buyer.

### Conclusion

29.    The Trustee believes that the sale of the Asset, under the terms of the APA, will enable the Trustee to obtain maximum value for the Assets for the benefit of the Estate and all

creditors, which would otherwise not be available for distribution absent approval of this Sale.

### Reservation of Rights

30.     The Trustee reserves the right, by future motion or pleading, to seek a surcharge of any secured claim pursuant to 11 U.S.C. §506(c).

WHEREFORE, the Trustee respectfully requests that the Court enter an Order (a) granting this Motion in all respects; (b) authorizing the Trustee to sell the Assets, pursuant to §363 of the Bankruptcy Code, the procedures set forth in this Motion, and the Asset Purchase Agreement free and clear of all Encumbrances, with such Encumbrances, to the extent permitted, to attach to the proceeds of the Sale; (c) authorizing the Trustee to consummate the sale of the Assets to the Buyer or any other buyer that presents a higher and better offer; (d) approving the form and manner of notice of the Motion, and hearing and order thereon, and any other motions, notices and hearings related to the Sale; (e) approving the bid procedures set forth in this Motion; and (f) granting such further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of May, 2019.

ROBERT A. ANGUEIRA, P.A.
16 S.W. 1st Avenue
Miami, Florida 33130
Tel. (305) 263-3328
e-mail yanay@rabankruptcy.com

By _____
YANAY GALBAN, ESQ
Florida Bar No. 0105146

Case No.: 19-13816-LMI

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was served by U.S. mail on this 3rd day of May, 2019, to all parties on the enclosed mailing matrix, and to the following additional parties:

Miami-Dade County Tax Collector
200 NW 2nd Ave.
Miami, FL 33128

Florida Department of Revenue
c/o Frederick F. Rudzik, Esq.
Bankruptcy Section POB 6668
Tallahassee, FL 32314-6668

Internal Revenue Service
Centralized Insolvency Operations
POB 7346
Philadelphia, PA 19101-7346

Miami-Dade County
Lien Collection Unit
111 NW 1st St. #1470
Miami, FL 33128
Internal Revenue Service
Attn: Hon. Ariana Fajardo Orshan
U.S. Attorney
99 N.E. 4th Street
Miami, FL 33132
Internal Revenue Service
c/o Matt Whitaker
Attorney General of U.S.
950 Pennsylvania Ave. NW
Washington, DC 20530-0001
Florida Business Development Corporation
Servicer for the SBA
7270 NW 12th Street, PH #6
Miami, FL 33126

Florida Power & Light Company
General Mail Facility
Miami, FL 33188

Office Depot Business Credit
Dept. 56 – 8407759072 POB 78004
Phoenix, AZ 85062

U.S. Attorney
Attn.: Civil Process Clerk
99 NE 4th Street
Miami, FL 33132
Florida Department of Revenue
c/o Leon M. Biegalski, Executive Director
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Internal Revenue Service
c/o IRS Counsel (SBSE)
51 SW 1st Ave., P.O. Box 9
Miami, FL 33130

U.S. Attorney
Attn.: Civil Process Clerk
99 NE 4th Street
Miami, FL 33132
Internal Revenue Service
Attn.: Commissioner of I.R.S.
1111 Constitution Ave. N.W.
Washington, DC 20224-0002

U.S. Small Business Administration
2120 River Front Drive, Suite 100
Little Rock, AR 72202

Captain's Fasteners, Corp.
Attn: Juan C. Betancor
3706 SW 30 Ave.
Fort Lauderdale, FL 33312

Dixie Transport, Inc.
15627 NW 15 Avenue
Miami Gardens, FL 33169

A Tarler Inc.
1403 SW 8 Street
Pompano Beach, FL 33069

Case No.: 19-13816-LMI

Acco
10880 NW 27 Street, S-200
Doral, FL 33172

All Tool & Fasteners Inc
7291 NW 78 Terrace
Medley, FL 33166

Black & Decker (US) Inc.
9850 Premier Pkwy
Miramar, FL 33025

Comcast
1701 JFK Boulevard
Philadelphia, PA 19103

Department of Water & Sewer
3071 SW 38 Ave.
Miami, FL 33146

Eastern Screw Co. Inc.
15 Amflex Dr.
Cranston, RI 02921

Yellow Woods
655 Union Blvd
Totowa, NJ 07512

Galaxy Fasteners
101 Telmore Rd.
East Greenwich, RI 02818

Hawk Fasteners
12324 S. Laramie Ave.
Alsip, IL 60803

Hydra Sponge Co., Inc.
325 Bessie Rd.
Piedmont, SC 29673

Inter's Fasteners, Inc.
993 West Valley Blvd.
Bloomington, CA 92316

Action Cargo Transport Inc.
Calle Diaz
Carolina, Puerto Rico

ASP
2511 East Capitol Dr.
Appleton, WI 54911

Chas O Larson Company
2602 E Rockfalls Rd.
Rock Falls, IL 61071

Continental Abrasives
1021 Fuller Street
Santa Ana, CA 92701

Drill America
6550 NW 72 Ave.
Miami, FL 33166

Fasteners Direct
1720 Boulter Industrial Park
Webster, NY 14580

Freud America, Inc.
218 Feld Ave.
High Point, NC 27263

Hardfer, Inc.
10172 NW 50 Street
Sunrise, FL 33351

Hindley Manufacturing, Co.
9 Haven St.
Cumberland, RI 02864

ISC
910 SW 12 Ave
Pompano Beach, FL 33069

Intercorp
450 Goolsby Blvd
Deerfield Beach, FL 33442

International Fasteners
1341 Massaro Blvd.
Tampa, FL 33619

Jobsite
7225 NW 68 St. #4
Miami, FL 33166

Lindstrom Metric, Inc.
2950 100th Ct. NE
Blaine, MN 55449

Mister Key Corporation
2194 NW 18 Ave.
Miami, FL 33142

Nelson Stud Welding, Inc.
7900 W Ridge Rd.
Elyria, OH 44035

Ocasa Logistics Solution
3450 NW 113 Court
Doral, FL 33178

PrimeSource Building Products, Inc.
11700 NW 100 Rd.
Miami, FL 33178

Qualtool, Inc.
28415 Lake Industrial Blvd.
Tavares, FL 32778

Star Stainless Screw Company
412 Cedar Lane 2nd Floor
Teaneck, NJ 07666

Tortoise Fastener Co.
412 Cedar Lane 2nd Floor
Teaneck, NJ 07666

United Parcel Service
PO Box 7247-0244
Philadelphia, PA 19170

Intertek Industrial Corp.
3023 Power Ave
Jacksonville, FL 32207

Kanebridge Corp.
250 Peble Ave. S-303
Saddle Brook, NJ 07663

Marine Fasteners d/b/a Brikksen
4150 Church Street S-1048
Sanford, FL 32771

NBS Corp.
3100 E. Slauson Ave.
Vernon, CA 90058

Nova Fasteners Co., Inc.
7500 New Horizons Blvd
Amityville, NY 11701

PCA Corrugated and Display, LLC
1955 W. Field Ct.
Lake Forest, IL 60045

Profast Corporation
5854 Miami Lakes Dr.
Miami Lakes, FL 33014

Southwire Company, LLC
1 Southwire Dr.
Carrollton, GA 30119

Stelfast Fasteners, Inc.
22979 Stelfast PKWY
Strongsville, OH 44149

U.S. Customs and Border Protection
POB 979126
St. Louis, MO 63197

Vertex Distribution
523 Pleasant St.
Attleboro, MA 02703

Case No.: 19-13816-LMI

Western Wire Products Co.
770 Sunpark Dr.
Fenton, MO 63026

World Horizons
910 SW 12 Ave.
Pompano Beach, FL 33069

U.S. Customs and Border Protection
6650 Telecom Dr.
Indianapolis, IN 46278

XL Screw Corporation
c/o Business Credit Management Association
15755 W Rogers Dr. #200, POB 510157
New Berlin, WI 53151

Cristina De Oliveira, Esq.
2332 Galiano Street 2nd Floor
Coral Gables, FL 33134

I CERTIFY that a true and correct copy of the foregoing was served via the Notice of Electronic Filing on this 3rd day of May, 2019, to:

- Robert A Angueira    trustee@rabankruptcy.com, fl79@ecfcbis.com;raa@trustesolutions.net;tassistant@rabankruptcy.com;richard@rabankruptcy.com;lillian@rabankruptcy.com
- Yanay Galban    yanay@rabankruptcy.com, robert@rabankruptcy.com
- Jonathan S Leiderman    jsl@lsaslaw.com, zbs@lsaslaw.com;info@lsaslaw.com;jleiderman@ecf.inforuptcy.com
- Mendy Lieberman    mmlegalpa@gmail.com, llevey@leveylaw.com,leveylieberman@gmail.com,liebermanlawyers@gmail.com,dlacayo@leveylaw.com
- Sundeep K Mullick    sunny@mullicklaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Alex P Rosenthal    alex@rosenthalcounsel.com
- Christian Somodevilla    cs@lsaslaw.com, info@lsaslaw.com;aslawpllc@ecf.inforuptcy.com
- Charles R Sterbach    Charles.r.sterbach@usdoj.gov
- Stephanie R Traband    srt@lklsg.com, lv@lklsg.com

ROBERT A. ANGUEIRA, P.A.
16 S.W. 1st Avenue
Miami, Florida 33130
Tel. (305) 263-3328
e-mail yanay@rabankruptcy.com

By _____
YANAY GALBAN, ESQ
Florida Bar No. 0105146



Case 19-13816-LMI



Ally
POB 380903
Bloomington, MN 55438-0903



Ally
Payment Processing Center
POB 78234
Phoenix, AZ 85062-8234

Ally Bank
PO Box 130424
Roseville, MN 55113-0004

American Management Services, Inc.
8250 Exchange Dr # 132
Orlando, FL 32809-7698

Brighton Best International
c/o The Receivable Management Services LLC
2001 6 Ave # 2200
Seattle, WA 98121-2558

Citibank, N.A.
Citi Cards
POB 6077
Sioux Falls, SD 57117-6077

Citibank, N.A.
Citibusiness Card
POB 9001037
Louisville, KY 40290-1037

Citibank, N.A.
ExxonMobil
POB 78001
Phoenix, AZ 85062-8001

Citibank, N.A.
POB 790046
St. Louis, MO 63179-0046

(p)DELL FINANCIAL SERVICES
P O BOX 81577
AUSTIN TX 78708-1577

Elite Sales, Inc
9445 SW 40 St
2nd Floor
Miami, FL 33165-4001

Elite Sales, Inc
c/o Recor Rieber, P.A.
848 Brickell Ave # 1000
Miami, FL 33131-2976





(p)FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180





Stanley Black & Decker Inc.
701 E Joppa Rd MY 005
Towson, MD 21286-5502

Jonathan S Leiderman
2699 Stirling Rd # C401
Ft Lauderdale, FL 33312-6598

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "*Agreement*") is made and entered into on this 1st day of May, 2019, by and between Robert A. Angueira in his capacity as Chapter 7 Trustee (the "*Seller*" or "*Trustee*") for the Bankruptcy Estate of Super Brite Screw Corp, Case #19-13816-AJC (the "*Bankruptcy Estate*") and Tri-Star Trading Co., with an address of c/o Law Office of Sundeep K. Mullick, P.A., 17 E. Flagler Street, Suite 222, Miami, FL 33131 (the "*Buyer*"). The parties to this Agreement shall be collectively referred to as the "*Parties*" or singularly as "*Party*".

## RECITALS

A.      WHEREFORE, on or about March 26, 2019, Super Brite Screw Corp. (the "*Debtor*") filed for relief under Chapter 7 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "*Bankruptcy Court*"), in the bankruptcy case captioned as: Super Brite Screw Corp. Case No. 19-13816-LMI (the "*Bankruptcy Case*");

B.      WHEREFORE, Robert A. Angueira is the duly appointed Chapter 7 Trustee for the Bankruptcy Estate of the Debtor;

C.      WHEREFORE, the Trustee desires to sell to Buyer the Debtor's personal property, in a wall-to-wall and floor-to-ceiling sale, located at Dixie Transport, Inc. at 15627 NW 15 Ave, Miami, FL 33169 (the "*Dixie Location*"), and located at 7265 W 19th Court, Hialeah, FL 33014 (the "*Hialeah Location*"), in an as is-where is condition, without any warranties, express or implied, and without any representations as to quality or quantity;

D.      WHEREFORE, the Buyer has done its own due diligence and inspections;



EXHIBIT
1

05/03/2019

Case No.: 19-13816-LMI

E.    WHEREFORE, the Buyer acknowledges that this sale will be subject to higher and better offers, as well as final approval by the Bankruptcy Court presiding in the Bankruptcy Case.

NOW THEREFORE, in consideration of the premises and mutual representations, warranties, covenants and agreements hereinafter set forth, and for other consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

## AGREEMENT

1.    <u>Sale of Assets.</u>

1.1.    <u>Assets to be Sold</u>. Except as otherwise provided this Agreement, pursuant to Bankruptcy Code §363, the Seller shall transfer to the Buyer, and the Buyer shall purchase from the Seller, any and all of the Seller's rights and interests in and to the Debtor's personal property, in a wall-to-wall and floor-to-ceiling sale, located at the Dixie Location and the Hialeah Location (the "*Assets*"). However, the Debtor's computers which contain the Debtor's books and records are not included and shall not be part of the Sale. However, the Buyer is not required to clear out and clean the Hialeah Location. It is anticipated and expected that the Buyer may leave behind, at the Hialeah Location, certain items including but not limited to: fixtures, certain containers, some shelving, racks and furniture that are not economically feasible to move out. Finally, the Buyer is not expected to leave the Hialeah Location in broom clean condition. The Buyer may, at his discretion, chose not to take certain furniture currently located in the Hialeah Location. If that happens, the Trustee may, but it is not required, to move such furniture and other items to another facility and sell them. If the Trustee decides to do this, then he will file a separate motion as needed.

1.2.    <u>As-Is Purchase</u>. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS BEEN OR WILL CONTINUE TO BE GIVEN A FULL OPPORTUNITY TO

05/03/2019

INSPECT AND INVESTIGATE EVERY ASPECT OF THE ASSETS, INCLUDING ALL MATTERS RELATED TO LEGAL STATUS OR REQUIREMENTS, BANKRUPTCY ACTION OF SELLER, TITLE AND OTHER MATTERS RELATED TO THE ASSETS. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT THE ASSETS IS BEING SOLD IN AN "AS IS" CONDITION AND "WITH ALL FAULTS" AS OF CLOSING DATE.   EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, NO REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE OR ARE MADE BY SELLER OR BY ANY OFFICER, PERSON, FIRM, AGENT OR REPRESENTATIVE ACTING OR PURPORTING TO ACT ON BEHALF OF SELLER AS TO ANY MATTERS CONCERNING THE ASSETS, INCLUDING, WITHOUT LIMITATION, THE VALUE, EXPENSE OF OPERATION, OR INCOME POTENTIAL THEREOF OR AS TO ANY OTHER FACT OR CONDITION WHICH HAS OR MIGHT AFFECT THE VALUE, EXPENSE OF OPERATION OR INCOME POTENTIAL OF THE ASSETS OR ANY PORTION THEREOF. SELLER SPECIFICALLY DISCLAIMS ANY OTHER IMPLIED WARRANTIES OR WARRANTIES ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR USE.   THE PARTIES AGREE THAT ALL UNDERSTANDINGS AND AGREEMENTS HERETOFORE MADE BETWEEN THEM OR THEIR RESPECTIVE AGENTS OR REPRESENTATIVES ARE MERGED IN THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES ATTACHED HERETO, WHICH ALONE FULLY AND COMPLETELY EXPRESS THEIR AGREEMENT, AND THAT THIS AGREEMENT HAS BEEN ENTERED INTO AFTER FULL INVESTIGATION, OR WITH THE PARTIES SATISFIED WITH THE OPPORTUNITY AFFORDED FOR FULL INVESTIGATION. BUYER IS NOT RELYING UPON ANY STATEMENT OR REPRESENTATION BY SELLER OR BY ANY OFFICER, PERSON, FIRM, AGENT OR REPRESENTATIVE ACTING OR PURPORTING TO ACT ON BEHALF OF SELLER UNLESS SUCH STATEMENT OR REPRESENTATION IS SPECIFICALLY EMBODIED IN THIS AGREEMENT OR THE EXHIBITS AND SCHEDULES ATTACHED HERETO. BUYER ACKNOWLEDGES THAT BUYER WILL HAVE BEEN ACCORDED FULL OPPORTUNITY TO FULLY INSPECT THE PURCHASED ASSETS AND INVESTIGATE ALL MATTERS RELEVANT THERETO, AND THAT, SUBJECT TO THE REPRESENTATIONS HEREIN, BUYER WILL RELY SOLELY UPON THE RESULTS OF BUYER'S OWN INSPECTIONS OR OTHER INFORMATION OBTAINED OR OTHERWISE AVAILABLE TO BUYER (BY SOURCES OTHER THAN SELLER AND ITS AGENTS), AND NOT UPON ANY INFORMATION THAT MAY HAVE BEEN PROVIDED BY SELLER OR ITS AGENTS TO BUYER. BUYER ACKNOWLEDGES AND AGREES THAT THE PURCHASE PRICE SET FORTH HEREIN TAKES INTO ACCOUNT THE RISKS ASSOCIATED WITH THE BUYER'S ACQUISITION OF THE ASSETS SUBJECT TO THE DISCLAIMERS SET FORTH ABOVE.

     1.3.    This Agreement is subject to bankruptcy court approval.  The Trustee will seek approval of this Agreement as an offer to purchase the Assets.  Therefore, this Agreement is

05/03/2019

subject not only to court approval of this Agreement, but also to a court procedure that will require the sale to be subject to higher and better offers to purchase the Assets.

2.      Purchase Price and Manner of Payment.

2.1.    Purchase Price.  Buyer shall pay the Trustee the sum of $145,000.00 for the Assets.

2.2.    Manner of Payment of the Purchase Price.  Upon execution of this Agreement, the Buyer shall pay to the Seller the Purchase Price as follows:  A deposit, of $29,000.00 (20% of the Purchase Price) shall be paid by May 6, 2019.  The payment will be by cashier's check, money order or attorney trust account check, and made payable to the order of Robert A. Angueira, P.A., and delivered to 16 SW 1st Ave., Miami, FL 33130.  This deposit will be held in the Law Firm Trust/IOTA Account maintained by Robert A. Angueira, P.A. pending closing.  The balance of $116,000.00 ($145,000.00 - $29,000.00) will be paid in full within 3 business days of the Court's approval of the sale of the Assets.  Should the sale of the Assets to the Buyer not be approved for any reason, Buyer's $29,000.00 deposit will be refunded within two (2) business days to the Buyer without further need of an order.

2.3.    Bidding Procedures and Increments:  If any interested party desires to submit an offer to purchase the Assets from the Trustee, the next minimum bid from any other potential bidders must be at least $5,000.00 higher than the Purchase Price of $145,000.00 identified in §2.1 above (the "*Overbid*"), in other words the Overbid shall be in the amount of $150,000.00.  Furthermore, to qualify as a bidder the Trustee must receive a deposit of $30,000.00 (20% of $150,000.00) in the form of a cashier's check, and a signed asset purchase agreement, at least two (2) business days prior to any hearing to approve this agreement.

05/03/2019

Subsequent bids shall be in $1,000.00 increments, and then proceeding down to incremental bids at the Trustee's discretion.

3.      Terms of Sale.

3.1.      Liens.  The sale of the Purchased Asset shall be made free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §363(f), with said liens to attach to the proceeds of the sale.

3.2.      Transfer Tax.  The Buyer shall be responsible for any and all federal and state taxes, including but not limited to excise, sales, value added, use, registration, stamp, franchise, property transfer, gains, transfer and similar taxes, levies, charges and fees (including all real estate transfer taxes, if any) incurred in connection with the transactions contemplated by this Agreement.  The Buyer and Seller agree to cooperate in the filing of all necessary documentation and tax returns with respect to all such taxes, including, without limitation, any pre-sale filing procedure.

3.3.      Removal of Assets.  A portion of the Assets are located at the Dixie Location.  This location is a warehouse which is not controlled by the Trustee. In the event that the Bankruptcy Court approves this agreement and the sale of the Assets to the Buyer, the Buyer agrees that he will remove the Assets from the Dixie Location by May 24, 2019. In the event that Buyer does not remove all property by May 24, 2019, the Buyer shall pay the Estate $500.00 per day starting on May 25, 2019, for each day the Buyer continues to occupy the Dixie Location, for a maximum of thirty (30) additional days. A portion of the Assets are located at the Hialeah Location. This location is a warehouse which formerly served as Super Brite Screw Corp's principal place of business, and which is now secured and controlled solely by the Trustee. In the event that the Bankruptcy Court approves this agreement and the sale of the Assets to the Buyer,

05/03/2019

Case No.: 19-13816-LMI

the Buyer agrees that Buyer will remove all property (subject to paragraph 1.1 herein) from the Hialeah Location on or before May 24, 2019 by 5:00 p.m. In the event that Buyer does not remove all property from the Hialeah Location by May 24, 2019, the Buyer shall pay the Estate $5,000.00 by May 25, 2019, which will give the Buyer until June 21, 2019 by 5:00 p.m. to remove the items the Buyer is taking from the Hialeah Location. If the Assets have not been completely removed by 5:00 p.m. on June 21, 2019, then the Trustee may file an ex parte Motion seeking authority to change the locks and retain all property still remaining at the Hialeah Location. Until such time as the sale to Buyer has been approved, and the total purchase price has been paid, Buyer may not remove any of the property from the Dixie Location or the Hialeah Location.

3.4. <u>Insurance during Removal of Property</u>. Buyer represents and warrants that it will use a licensed and insured moving company to remove the Assets from the Dixie Location and the Hialeah Location. The Buyer shall provide the Trustee with proof of the mover's insurance coverage at closing which coverage shall include Buyer and Seller as additional insureds. In the event that Buyer fails to comply with the provisions of this paragraph, then the Buyer shall pay the Estate the sum of $500.00 per day until the Buyer complies.

4. <u>Closing</u>. Subject to compliance with or waiver of the conditions set forth in this Agreement, the closing of the transactions contemplated hereby (the "***Closing***") shall occur within three (3) business days after Court approval, unless shortened by the Court or extended by the Trustee.

5. <u>Limited Representations of the Seller</u>. The Seller represents to the Buyer as follows:

5.1. <u>Qualification; Enforceability</u>.

Page 6 of 14

05/03/2019

Case No.: 19-13816-LMI

(a)    This Agreement and the other instruments delivered in connection herewith, when executed and delivered by the Seller constitute the legal, valid and binding obligations of the Seller in accordance with their respective terms, except to the extent that the enforcement thereof may be limited by the Bankruptcy Court.

5.2.    <u>Authority to Execute and Perform Agreements</u>.  The Seller has the full legal right and power and all necessary authority, upon approval of the Bankruptcy Court, to execute and deliver this Agreement and to perform fully the Seller's obligations hereunder.  At the Closing, no approval or consent of any foreign, federal, state, county, local or other governmental or regulatory body, and (except as otherwise specified in this Agreement or any Schedule hereto) no approval or consent of any other person other than the Bankruptcy Court is required in connection with the execution and delivery by the Seller of this Agreement and the consummation and performance by the Seller of the transactions contemplated hereby.

6.    <u>Limited Representations of the Buyer</u>.  The Buyer represents to the Seller as follows:

6.1.    <u>Due Organization</u>.  The Buyer has the requisite power and lawful authority to own assets and properties and to carry on business as now conducted. The Buyer is qualified to transact business and is in good standing in each jurisdiction in which the nature of his business or location of his properties requires such qualification and in which the failure to so qualify would have a material adverse effect on the Buyer.

6.2.    <u>Authority to Execute and Perform Agreements</u>.  The Buyer has the full legal right and power and all authority and approval required to enter into, execute and deliver this Agreement and to perform fully Buyer's obligations hereunder.  This Agreement has been duly executed and delivered and is the valid and binding obligation of the Buyer, enforceable in accordance with its terms.

05/03/2019

6.3.   <u>Full Disclosure</u>.   To the knowledge of the Buyer, the information furnished by or on behalf of the Buyer to the Seller in connection with this Agreement and the transactions contemplated hereby does not contain any untrue statement of a material fact.

7.   <u>Pre-Closing Covenants and Agreements</u>.  Between the date hereof and the Closing Date, the parties covenant and agree as follows:

7.1.   CONSENT TO JURISDICTION AND SERVICE OF PROCESS.  ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE INSTITUTED IN THE BANKRUPTCY COURT, AND EACH PARTY WAIVES ANY OBJECTION WHICH SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH ACTION, SUIT OR PROCEEDING, AND IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE BANKRUPTCY COURT IN ANY SUCH ACTION, SUIT OR PROCEEDING.

7.2.   <u>Further Assurances</u>.  Each of the Parties shall execute such documents and other papers and perform such further acts as may be reasonably required or desirable to carry out the provisions hereof and the transactions contemplated hereby.  Each such party shall use its best efforts to fulfill or obtain the fulfillment of the conditions to the Closing, including, without limitation, the execution and delivery of any documents or other papers, the execution and delivery of which are conditions precedent to the Closing.

8.   <u>Conditions Precedent to the Obligation of the Buyer to Close</u>.  The obligation of the Buyer to enter into and complete the Closing is subject to the fulfillment on or prior to the Closing Date of the following conditions, any one or more of which may be waived by the Buyer.

8.1.   <u>Approval Order</u>.  It is a material inducement to the Buyer to be able to purchase the Assets pursuant to the provisions of 11 U.S.C. §363(f) and pursuant to an order by the Bankruptcy Court (the "*Approval Order*") providing each of the elements set forth below, where such order is entered and not subject to any stay, reversal or modification.

05/03/2018

(a)   Approving the sale, assignment and transfer of the Asset, <u>free and clear</u> of all Liens, Claims, or Encumbrances pursuant to Bankruptcy Code §363(f). The Trustee will request that the Court make a finding that Buyer is a bona fide good faith purchaser and that the sale is an arm's length transaction pursuant to Bankruptcy Code §363(m), with the sale of the Asset to be in "AS IS WHERE IS" condition; and

(b)   Finding that the Seller has been duly authorized to execute and deliver such instruments as the Seller is required to execute and deliver pursuant to the terms of this Agreement.

8.2.   <u>Seller Deliveries</u>.   The Seller shall have provided to the Buyer the following:

(a)   Bill of Sale covering the Assets described herein; and

(b)   Approval Order of the Bankruptcy Court.

8.3.   <u>Buyer Deliveries</u>.   The buyer shall have provided to the Seller the following:

(a)   The Purchase Price; and

(b)   Payment of any and all applicable taxes as more fully detailed in Section 3.2 above.

9.   <u>Conditions Precedent to the Obligation of the Seller to Close</u>.   The obligation of the Seller to enter into and complete the Closing is subject to the fulfillment on or prior to the Closing Date of the following conditions, any one or more of which may be waived by the Seller.

9.1.   <u>Representations</u>.   The representations of the Buyer contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. The Buyer shall have performed and complied with all material covenants and agreements required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

05/03/2019

Case No.: 19-13816-LMI

10.   Termination; Fees.

10.1.   Termination.  This Agreement may be terminated prior to the Closing as follows:

(a)   By the Seller, pursuant to an order of the Bankruptcy Court;

(b)   At the election of the Seller, if any one or more of the conditions to Seller's obligation to close has not been fulfilled as of the Scheduled Closing Date;

(c)   At the election of the Seller, if the Buyer has breached any material representation, covenant or agreement contained in this Agreement; and

(d)   At any time on or prior to the Closing Date, by mutual written consent of the Seller and the Buyer.

If this Agreement terminates in accordance with any of the foregoing sections, this Agreement shall become null and void and have no further force or effect, except as otherwise provided herein, and the Buyer shall be entitled to the return of the Deposit (if any). If the Buyer intentionally breaches the Agreement, the Seller shall be entitled to retain the Deposit as the Seller's sole remedy for such breach.

10.2.   Fees, Expenses and Other Payments.  All out-of-pocket costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred by the parties hereto shall be borne solely and entirely by the party which has incurred such costs and expenses except as otherwise set forth herein (with respect to such party, its "*Expenses*").

11.   Miscellaneous.

11.1.   Notices.  Any notice or other communication required or which may be given hereunder shall be in writing and shall be delivered personally, transmitted by facsimile or sent by overnight courier or mailed certified, registered or express mail, postage prepaid, and

05/03/2019

Case No.: 19-13816-LMI

shall be deemed given when so delivered personally, transmitted the next business day if sent by

overnight courier, or if mailed, three days after the date of mailing, as follows:

(a)    If to the Seller, to:

Robert A. Angueira
Chapter 7 Trustee
16 SW·1ˢᵗ Ave.
Miami, FL 33130
Tel.: (305) 263-3328
Email:  Trustee@rabankruptcy.com

(b)    If to the Buyer, to:

Tri-Star Trading Co.
c/o Sundeep K. Mullick, Esq.
Law Office of Sundeep K. Mullick, P.A.
17 E. Flagler Street, Suite 222
Miami, FL 33131
Tel: 305-358-6800
sunny@mullicklaw.com

and

Tri-Star Trading Co.
Lewis J. Levey, Esq.
The Levey Law Firm, P. A.
1688 Meridian Avenue, Suite 900
Miami, Florida  33139
Tel.: (305) 672-5007
Llevey@Leveylaw.com

11.2.  Entire Agreement.  This Agreement contains the entire agreement among

the parties with respect to the purchase of the Assets and related transactions and supersedes all

prior agreements, written or oral, with respect thereto.

11.3.  Waivers and Amendments.  This Agreement may be amended, modified,

superseded, canceled, renewed or extended, and the terms and conditions hereof may be waived

only by a written instrument signed by the parties or, in the case of a waiver, the party waiving

compliance.  No delay on the part of any party in exercising any right, power or privilege

05/03/2019

hereunder shall operate as a waiver thereof, nor shall any waiver on the part of any party of any right, power or privilege hereunder, nor any single or partial exercise of any right, power or privilege hereunder, preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies which any party may otherwise have at law or in equity. The rights and remedies of any party arising out of or otherwise in respect of any inaccuracy in or breach of any representation, warranty, covenant or agreement contained in this Agreement shall in no way be limited by the fact that the act, omission, occurrence or other state of facts upon which any claim of any such inaccuracy or breach is based may also be the subject matter of any other representation, warranty, covenant or agreement contained in this Agreement (or in any other agreement between the parties) as to which there is no inaccuracy or breach.

11.4. <u>Advice of Counsel</u>. The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, or have had the opportunity to so consult with counsel of their own choice, and that they have read this Settlement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Settlement, and each Party has had it fully explained to them and understands the terms and provisions of this Settlement and its nature and effect. Each Party further represents that they are entering into this Settlement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on representation of any other Party or of counsel for any other Party.

11.5. <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Florida without regard to principles of conflicts of law.

11.6.   <u>Jurisdiction</u>.   The United States Bankruptcy Court shall have exclusive jurisdiction over the parties to this Agreement, and all such parties consent to venue for any disputes to be in the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

11.7.   <u>No Assignment</u>.   This Agreement is not assignable by the parties hereto, except pursuant to an order issued by the Bankruptcy Court.

11.8.   <u>Counterparts</u>.   This Agreement may be executed in two or more counterparts and by facsimile or Adobe PDF e-mail attachment, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

11.9.   <u>Binding on Successors, Assigns and Others</u>.   This Agreement and the covenants and conditions contained herein shall apply to, be binding upon and inure to the heirs, executors, administrators, conservators, trustees, agents, legal representatives, successors, transferees and assigns of the Parties hereto.

11.10.   <u>Recitals</u>.   The foregoing recitals are true and correct and incorporated herein as if fully set forth herein.

*[Remainder of Page Intentionally Left Blank]*

05/03/2019.

Case No.: 19-13816-LMI

11.11.  <u>Construction</u>.  This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.


Date:_____          CHAPTER 7 TRUSTEE


                                By: _____
                                    Robert A. Angueira, Trustee
                                    Chapter 7 Trustee for Super Brite Screw Corp.


Date: May 3, 2019              TRI-STAR TRADING CO.


                                By: Wan Che Keung
                                Name:
                                Title: Director

11.11. <u>Construction</u>. This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

Date: 5/3/2019

CHAPTER 7 TRUSTEE

By: _____
Robert A. Angueira, Trustee
Chapter 7 Trustee for Super Brite Screw Corp.

Date: _____

TRI-STAR TRADING CO.

By: _____
Name:
Title: